## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Vic Lawrence Norman**                                                                                **Plaintiff**

**v.**                                          **No. 4:13–CV–535-JLH-HDY**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                      **Defendant**

### Instructions for Recommended Disposition

The following recommended disposition will be sent to U.S. District Judge J.

Leon Holmes.  A party to this dispute may file and serve written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  Failing to object within 14

days may waive the right to appeal questions of fact.[2]  An objecting  party who seeks to

submit new, different, or additional evidence, or to obtain a hearing for that purpose,

must address the following matters as part of written objections: (1) why the record

before the magistrate judge was inadequate, (2) why the evidence was not presented to

the magistrate judge, and (3) details and/or copies of any testimony and/or documents

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

to be proffered at a hearing.  Based on this submission, Judge Holmes will determine the need for a hearing.

<u>**Recommended Disposition**</u>

Vic Lawrence Norman seeks judicial review of the denial of his third application for disability insurance benefits and supplemental security income.[3]  Norman stopped working on July 29, 2010, after he was hospitalized for an irregular heart beat.  He claims he has been disabled since that time.  He bases disability on his heart, poor circulation, high blood pressure, and shortness of breath.[4]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Norman has severe impairments — cardiac arrhythmia, chronic obstructive pulmonary disease (COPD), and carpal tunnel syndrome in the non-dominant hand[5] — but he can do some light work, to include his past work as a security guard.[6]  Because a person who can do his past work is not

---

[3]SSA record at p. 123 & 125 (alleging the onset of disability on Aug 1, 2010); *id*. at p. 28 (amending onset to July 29, 2010).  Norman's earlier applications were denied on January 20, 2006 and October 1, 2010.  *Id*. at pp. 140-41.

[4]*Id*. at p. 145.

[5]*Id*. at p. 13.

[6]*Id*. at pp. 14-19.  The vocational expert identified additional representative work that a person with Norman's limitations can do.

disabled[7] and the ALJ, relying on testimony from a vocational expert, alternatively found there were other jobs in the national economy he could perform, the ALJ denied the application.[8]

After the Commissioner's Appeals Council denied a request for review,[9] the ALJ's decision became a final decision for judicial review.[10]  Norman filed this case to challenge the decision.[11]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

―――――――――――――

[7]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[8]SSA record at p. 20.

[9]*Id.* at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Norman's allegations**.  Norman claims he didn't receive a full and fair hearing, in part, because the ALJ did not consider all required factors in evaluating his credibility.  He maintains the ALJ should have given his primary care physician's (PCP) opinion controlling weight.  He contends the hypothetical question didn't consider his medications.  He argues that the vocational expert's testimony conflicts with the Dictionary of Occupational Titles (DOT).  For these reasons, he maintains substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**.  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Norman can do his past work as a security guard.[14]  The DOT classifies a security guard as light work.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[15]  The ALJ placed the following limitations on light work: (1) occasional handling and fingering with the non-dominant left hand, and (2) no excessive exposure to dust, smoke, fumes or other pulmonary irritants.[16]  The

---

[13]Docket entry # 10.

[14]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[15]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[16]SSA record at pp. 14-15.

question before the court is whether Norman can work with these limitations.[17]

**Whether substantial evidence exists**.  The ALJ's determination about a claimant's ability to work must be supported by medical evidence; a claimant's subjective allegations are not enough to prove he is disabled.[18]  The medical evidence shows Norman was hospitalized on July 29, 2010 for atrial flutter[19] — a cardiac arrhythmia, or irregular heartbeat, in which the upper chambers of the heart beat faster than the lower chambers.[20]  Norman's third application flowed from the hospitalization.  His condition provides no basis for disability benefits.  His reliance on his doctor's medical opinion[21] does not change the result — even though the ALJ mis-stated how often the doctor saw Norman — because the doctor indicated Norman's condition was not expected to last 12 continuous months.[22]

---

[17]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[18]42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. §§ 404.1508 & 416.908.

[19]SSA record at p. 268.

[20]Lori De Milto, 1 The Gale Encyclopedia of Med. 532 (4th ed.).

[21]SSA record at 336-37.

[22]*See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits).  *See also* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

Atrial flutter.  Atrial flutter "can cause a blood clot to form in the heart" which can lead to a stroke or an embolism.[23]  "Patients with atrial…flutter can live a normal life for many years as long as the arrhythmia is controlled and serious blood clots are prevented."[24]  There are several causes for atrial flutter; relevant here, high blood pressure, smoking, and excessive alcohol intake.  Treating atrial flutter includes surgical ablation, controlling blood pressure, abstaining from smoking, and drinking alcohol in moderation.[25]

Norman is a long-time smoker and a heavy drinker.[26]  He underwent surgical ablation on July 30, 2010.[27]  He then underwent anticoagulation therapy.[28]  He's done well.  He hasn't seen a cardiologist since October 2010.[29]  His heart beat has remained

---

[23]Lori De Milto, 1 The Gale Encyclopedia of Med. 532 (4th ed.).

[24]*Id*. at p. 534.

[25]*Id*. at p. 533.

[26]SSA record at p. 47 (testifying that he smokes a pack of cigarettes per day and drinks a pint of vodka per day); p. 230 (upon hospital admission, he reported smoking a pack per day for 35 years and a pint of vodka per day); p. 294 ( two months later, he still smoked, but said he drank .5 pint every other day); p. 342 (still smoking on Feb. 28, 2012).

[27]*Id*. at p. 236.

[28]*Id*. at pp. 215-16 & 271-72.

[29]*Id*. at p. 276.

regular.[30]  He hasn't developed a blood clot.  His blood pressure is under control.  He

continues to smoke and drink alcohol despite repeated warnings from medical

providers.  Norman's failure to follow medical advice weighs against his credibility.[31]  If

he was as limited as he alleges, he would follow medical advice.

Medical recommendations show Norman's heart condition can be controlled.

"An impairment which can be controlled by treatment or medication is not considered

disabling."[32]  Norman's failure to follow medical advice without good reason bars him

from obtaining disability benefits.[33]  A reasonable mind would accept the evidence as

adequate to show atrial flutter doesn't prevent Norman from working because his heart

rate is regular, he has no blood clots, and he does not follow medical advice.

COPD.  Norman's complaints about shortness of breath might flow from his

heart, but his lungs is a likely source.  Norman has COPD.[34]  COPD is "a disease state

---

[30]*Id*. at pp. 352, 354, 356, 362 & 364.

[31]*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

[32]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[33]*See Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984) ("The Secretary's regulations provide that a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits.").  *See* 20 C.F.R. § § 404.1530 & 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

[34]SSA record at p. 340.

characterized by the presence of airflow obstruction as a result of chronic bronchitis or emphysema."[35]  Smoking cigarettes is the primary cause of COPD.[36]  Norman has smoked for 35 years.

Doctors advised Norman to stop smoking, but he continues to smoke.[37]  Despite smoking, his lungs have been clear.[38]  The presence of wheezing, rales, or crackles would have evidenced difficulty with breathing.[39]  Medical exams indicate COPD does not prevent Norman from doing light work.  Continuing to smoke, knowing the health hazards of smoking, weighs against Norman's credibility.[40]  A reasonable mind would accept the evidence as adequate to show COPD does not prevent Norman from

---

[35]Seema Khaneja & Laura Obiso, 14-200 Attorneys' Textbook of Med. P 200.48[3] (3d ed.).

[36]Harry W. Golden & Tish Davidson, 2 The Gale Encyclopedia of Med. 1026 (4th ed.).

[37]SSA record at pp. 33, 47, 230, 273, 294, 342, 344,347, 356 & 360.

[38]*Id*. at pp. 342, 344, 346, 348, 350, 352, 354, 356, 362 & 364.

[39]*See* Harry W. Golden & Tish Davidson, 2 The Gale Encyclopedia of Med. 1026 (4th ed.) (discussing symptoms of COPD and respiratory failure); 4 Attorneys' Dictionary of Med. R-18 (describing "rale" as an abnormal sound heard through the chest wall indicating a diseased condition of the lung); Taber's Cyclopedic Med. Dictionary 2019 (16th ed.) (defining "wheezing" as the production of whistling sounds during difficult breathing).

[40]*McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) (rejecting claimant's argument that COPD posed a non-exertional limitation where claimant complained about shortness of breath and doctor instructed her to stop smoking).

working because his lungs are clear and he continues to smoke.  To the extent Norman

has difficulty breathing, the ALJ's restrictions on pulmonary irritants respond to that

difficulty.

Carpal tunnel syndrome.  Norman's doctor diagnosed carpal tunnel in the left

wrist.[41]  "Carpal tunnel syndrome is a disorder caused by compression at the wrist of

the median nerve supplying the hand, causing numbness and tingling."[42]  Norman

reported weakness in the left arm and numbness in the fingertips.[43]

"Carpal tunnel syndrome is initially treated with splints, which support the wrist

and prevent it from flexing inward into the position which exacerbates median nerve

compression.…The most severe cases…may require surgery to decrease the

compression of the median nerve and restore its normal function."[44]  Norman's doctor

prescribed a wrist splint.[45]  Norman testified that the splint helps a little bit.[46]  Even

though the record doesn't reflect the severity of Norman's carpal tunnel syndrome, a

reasonable mind would accept the evidence as adequate to support the decision despite

---

[41]SSA record at p. 354.

[42]Rosalyn Carson-DeWitt, 2 The Gale Encyclopedia of Med. 865 (4th ed.).

[43]SSA record at p. 354.

[44]Rosalyn Carson-DeWitt, 2 The Gale Encyclopedia of Med. 866 (4th ed.).

[45]SSA record at pp. 60 & 354.

[46]*Id*. at p. 60.

carpal tunnel syndrome because it affects the left, non-dominant arm and because the ALJ limited fingering and handing with the left arm.

Vocational evidence.  The ALJ asked the vocational expert about available work for a person with Norman's limitations.[47]  According to the vocational expert, such a person can work as a security guard.[48]  The vocational expert identified gate guard and ticket seller as other representative jobs.[49]  Norman asserts that the testimony conflicts with the DOT, but he identified no conflict.  No conflict exists.  None of the jobs the vocational expert identified exceed Norman's capacity.

To the extent he maintains the ALJ should have included limitations flowing from medication, he did not show medication limits his ability to work.  A reasonable mind would accept the vocational evidence as adequate to show Norman can do his past work as a security guard, as well as other light work, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[50]  Because such work exists, Norman is not disabled under social security disability law.

---

[47]*Id*. at p. 64.

[48]*Id*.

[49]*Id*. at p. 65.

[50]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).

**Conclusion and recommendation**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Norman's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

It is so ordered this __8__ day of August, 2014.

_____
United States Magistrate Judge

11